UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAIME VALENTE PINA, JR.,

    Defendant.
_____/

Case No. 1:17-cr-08

HON. JANET T. NEFF

## **OPINION**

Pending before the Court is Defendant Jamie Pina's Motion for New Trial (ECF No. 160). The Government has filed a Response in opposition (ECF No. 203), and Defendant has filed a Reply (ECF No. 210). For the reasons that follow, Defendant's Motion is denied.

### I. BACKGROUND

Defendant was charged in an eight-count indictment with conspiracy to distribute and to possess with intent to distribute cocaine (Count 1), and possession with intent to distribute cocaine (Count 7), following the November 9, 2016 search of Benito Escamilla's home in Ravenna Township by the Michigan State Police West Michigan Enforcement Team (WEMET). Inside the residence were Defendant and his brother, Angel Pina. Police seized approximately 28 grams of cocaine found in Defendant's pocket, along with his cell phone, and $540 (*see* ECF No. 203 at PageID.1481 and record citations). Defendant was read his Miranda rights and made a number of incriminating statements to the police on site, admitting that he knew the substance in his pocket was cocaine, although he stated that he was not a user of cocaine (*id.*).

Defendant and his brother Angel were arrested during the search. Defendant was held in state custody on state charges until he made bail. The day after the search, on November 10, 2016, Defendant made additional statements to detectives, again admitting he knew the substance in his pocket was cocaine, but stating that it was for personal use (*see* ECF No. 203 at PageID.1481 and record citations). On November 14, 2016, Defendant was arraigned on a state charge of possession with intent to deliver 50 grams or more but less than 450 grams of cocaine (*id.* at PageID.1482 and record citations).

On November 16, 2016, while still in state custody, Defendant made statements to police after alleged advisement from his former state defense attorney, Edward Anderson, who had been hired by Defendant's family to represent/speak with Defendant and his brother Angel, who was also in state custody. Defendant stated, among other things, that during the summer of 2016, he supplied cocaine to an individual in Walkerville, Michigan, with the last name of Rodriguez, who drove a red truck and that he "middle-manned" deals for his relative, Benito Escamilla (*see* ECF No. 203 at PageID.1482 and record citations). Defendant told police that Rodriguez and Escamilla did not have a good relationship, so he worked as a go-between, and he supplied cocaine to Rodriguez every four or five days from May 2016 through August 2016 (*id.*). The following day, the state charged Defendant with conspiring with Benito Escamilla, Angel Pina, and others to deliver 50 grams or more but less than 450 grams of cocaine (*id.*).

Defendant was thereafter charged in this case, and his current counsel was appointed. Co-defendants Magdaleno Rodriguez and Angel Pina were likewise charged in this case, and both entered guilty pleas. Co-defendant Rodriguez cooperated with law enforcement and testified against

2

Defendant. Following a three-day jury trial on May 8 through May 10, 2017, Defendant was convicted of both counts charged (Counts 1 and 7) (ECF No. 153, Verdict Form, PageID.646).

Prior to trial, Defendant moved to exclude evidence obtained in his November 16, 2016 statements to police, on the grounds that the statements were the result of ineffective assistance of counsel in violation of the Sixth Amendment. Defendant argued that Attorney Anderson provided ineffective assistance of counsel by: (1) suggesting and encouraging Defendant to make incriminating statements to police without a proffer agreement and without sufficient information about the case; and (2) arguably representing the conflicting interests of both Pina brothers as co-defendants, or at least having confidential information regarding each (ECF No. 54 at PageID.119). The Court denied the motion without prejudice because the claim was premature, i.e., Defendant had not yet suffered any actual prejudice as a result of the potential constitutional violation stemming from Defendant's statements to state authorities while he was in state custody (ECF No. 185 at PageID.826-827).

Attorney Anderson was called to testify at Defendant's trial. Defendant now asserts that Anderson's testimony was sufficient to confirm the underlying factual premise of Defendant's original motion to exclude his November 16, 2016 statements. In his motion for new trial, Defendant again argues that his right to the effective assistance of counsel was violated when Attorney Anderson advised Defendant, and permitted him, to make statements to law enforcement officers on November 16, 2016, despite Attorney Anderson's ethical conflict. Defendant moves for a new trial, in which the statements he made to police on November 16, 2016, and anything else resulting therefrom, are excluded from use by the Government because the evidence was obtained in violation of Defendant's Sixth Amendment rights.

## II. ANALYSIS

### A. Legal Standards

Federal Rule of Criminal Procedure 33(a) provides in relevant part:

**(a) Defendant's Motion.** Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

"A motion for a new trial can be premised on the argument that the 'verdict was against the manifest weight of the evidence,' and it can be premised on the argument that 'substantial legal error has occurred.'" *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quoting *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) ("[I]t is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred."). A violation of the Sixth Amendment right to effective assistance meets the "substantial legal error" standard. *Munoz*, 605 F.3d at 373-74.

In deciding such a motion, the Court applies the well-established standards for ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance, a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) that "counsel's performance [was] prejudicial to the defense ...." *Strickland*, 466 U.S. at 688, 692; *Munoz*, 605 F.3d at 376. "Counsel's performance violates the Sixth Amendment only where 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Munoz*, 605 F.3d at 376 (quoting *Strickland*, 466 U.S. at 686).

"The decision to grant or deny a motion for new trial rests within the district court's sound discretion." *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991); *see also Munoz*, 605 F.3d at 366.

**B. Discussion**

As a threshold matter, the Government argues that Defendant's motion fails because his Sixth Amendment right to counsel on the federal cocaine conspiracy charge—for which he was arraigned on January 18, 2017—had not attached when Defendant made the statements to WEMET on November 16, 2016, admitting involvement in the cocaine conspiracy. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (Sixth Amendment right to counsel is "offense-specific"); *see also Texas v. Cobb*, 532 U.S. 162, 167-68 (2001) (Sixth Amendment does not attach to uncharged crimes even if they may be factually-interwoven with the charged crime). Defendant responds that the Court should hold that Defendant's Sixth Amendment right to counsel had attached, because even though there is contrary precedent, the Sixth Circuit Court of Appeals is currently considering an analogous case *en banc*,[1] and "[t]here are indications that the Sixth Circuit will side with the four circuits who currently hold that Supreme Court precedent requires a finding that the right to counsel can attach pre-indictment" (ECF No. 210 at PageID.1522).

The Court need not decide this unsettled issue of law, because even if Defendant's Sixth Amendment right to counsel had attached, Defendant's motion fails under the *Strickland* analysis. As the Government argues, Defendant has failed to show that counsel's performance was deficient or that he was prejudiced by any alleged deficient performance.

---

[1]*Turner v. United States*, 848 F. 3d 767 (6th Cir. 2017), *reh'g en banc granted, opinion vacated*, No. 15-6060, 2017 WL 1359475 (6th Cir. Apr. 13, 2017).

1. November 16, 2016 Statements

Defendant claims that Anderson's performance was deficient because he "not only allowed, but also suggested and encouraged, [Defendant] to make incriminating statements to police without a proffer agreement in place and without sufficient information about the case," and "[n]o reasonable defense attorney would recommend such action" (ECF No. 161 at PageID.665). Defendant further states that Anderson failed "to inquire with the AUSA [Assistant United States Attorney] about potential plea terms before submitting to a proffer session" (ECF No. 210 at PageID.1527). Defendant cites no evidence or specific authority to support this claim.

"Counsel's performance is objectively unreasonable only where 'the identified acts or omissions were outside the wide range of professionally competent assistance,' as determined by 'prevailing professional norms.'" *Munoz*, 605 F.3d at 376 (quoting *Strickland*, 466 U.S. at 690). Defendant has failed to make this showing with respect to his claim concerning the proffer. Further, "[i]n reviewing the adequacy of counsel's performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Munoz*, 605 F.3d at 376 (quoting *Strickland*, 466 U.S. at 689). Here, as the Government points out, Defendant had already acknowledged the cocaine in his pocket and that he was not a user in his statements at the site of the search on November 9, 2016 (ECF No. 203 at PageID.1496). And Defendant himself acknowledges that he had made two prior statements to police before Anderson submitted him to a proffer (ECF No. 210 at PageID.1527). Given the evidence at the time, Attorney Anderson's conduct is entitled to the presumption that it was within the wide range of reasonable professional assistance. Defendant's conclusory claim that Anderson's performance was deficient fails.

Further, given Defendant's other statements to police, including those he made at the time of his arrest and on November 10, 2016, and the ample evidence of his guilt presented at trial, including the testimony of co-defendant Rodriguez and the records of text messages from the co-conspirators cell phones, Defendant has failed to show that he was prejudiced, as required under the second prong of the *Strickland* test. "[T]o establish prejudice, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Munoz*, 605 F.3d at 377 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *Id.* "'When determining prejudice, [a court] must consider the errors of counsel in total, against the totality of the evidence in the case.'" *Munoz*, 605 F.3d at 377 (quoting *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir. 2006)).

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Id.* at 691-92. Here, the undersigned has presided over the proceedings in this case, including the presentation of evidence over the course of a three-day trial, and is fully persuaded that any alleged error with respect to the November 16, 2016 statements would not have resulted in a different outcome.

2. Conflict of Interest

Defendant claims that Anderson "offered interrogations of both Pina brothers to the WEMET detectives with the purpose of negotiating a better plea deal for them, but without obtaining proffer protection for [Defendant] and *while under an ethical conflict because he had obtained confidential*

7

*information from both brothers*" (ECF No. 210 at PageID.1524, emphasis added). Again, the evidence and authority cited by Defendant falls far short of establishing this claim of ineffective assistance.

Defendant asserts that there can be no dispute that Attorney Anderson was operating under an actual conflict, citing to the following record of Anderson's testimony in response to questioning by the Government at trial:

> Q. Okay. By the time that you were done meeting, that brief first meeting with both of these brothers, did you have a person that you considered a client?
>
> A. No. I had a quandary.
>
> Q. Pardon me?
>
> A. I had a quandary.
>
> Q. You had a quandary, meaning a problem.
>
> A. Yeah. Because of something that Angel said to me, the guy who I met first.
>
> Q. Okay. But did you eventually represent, though, Jimmy or Jaime or Jaime Pina?
>
> A. I thought I did.
>
> Q. Okay. Well --
>
> A. Initially, if you will, yes, sir. But I did not go through the formal state filing of an appearance for the reason that I was immediately told that Homeland Security wanted to interview them. I was told that the Assistant U.S. Attorney wanted to interview them. And there were tactical considerations as well.
>
> Q. Okay. Well, let's get into that a little bit. You practice primarily in state court?
>
> A. Yes sir.
>
> Q. Did the fact that this case might go into federal court, is that a tactical consideration about whether you're going to be a lawyer going forward in a federal case as opposed to whether it stays in state court?

> A. It is, as well as the timing. Your office, as you know, is a high powered office. You're very insistent on getting things committed quickly. I did not want to prejudice these guys by dancing on the head of that pin when they might be well advised to come forward.

(ECF No. 210 at PageID.1526; ECF No. 188 at PageID.1278-79.)

Defendant asserts that Anderson "obtained confidential information from both Pina brothers, felt that something Angel Pina told him prevented him from representing both brothers, and then went forward with a decision to advise [Defendant] to submit to interrogation and represented him there" (ECF No. 210 at PageID.1526, internal citations omitted). Further, Anderson "knew he could not represent both brothers because of something that Angel Pina said to him, but then made a decision to require Angel to obtain another lawyer and continue advising Jaime Pina" (*id.* at PageID.1527). Defendant argues that "[t]his falls below the standard of required competence and prejudiced [him]" (*id.*).

First, Defendant has failed to show that these facts establish that Anderson continued to represent Defendant despite an actual conflict of interest. At most, Defendant has shown that Anderson (and state law enforcement officers, as well) recognized a potential conflict of interest. As Defendant states, "the police mentioned to Mr. Anderson that he could not ethically represent both brothers and co-defendants," and "[t]he investigating agents acknowledged and were aware of at least the potential of this inherent conflict of interest" (ECF No. 161 at PageID.666).

Likewise, the facts on which Defendant relies, and his arguments, are equivocal regarding whether Anderson engaged in an actual conflict of interest in representing Defendant. Defendant states that "Anderson said he knew he could not represent both brothers because of something that Angel Pina said to him, but then made a decision to require Angel to obtain another lawyer and continue advising Jaime Pina" (ECF No. 210 at PageID.1527). Similarly, Defendant states that

9

"Anderson made the recommendation while arguably representing the conflicting interests of both Pina brothers as co-defendants, or at least having confidential information regarding each" (ECF No. 161 at PageID. 665-666). Such assertions and argument reflect the questionable basis for claiming ineffective assistance based on an actual conflict of interest. Recognizing that he had a "quandary," Anderson undertook the representation of only Defendant. Anderson appears to have taken a proper course of action.

In any event, contrary to Defendant's argument, these facts do not establish an actual conflict of interest such that prejudice must be presumed. *Strickland* is instructive on this specific point:

> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. *See United States v. Cronic*, 466 U.S., at 659, and n.25, 104 S. Ct., at 2046-2047, and n.25. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. 466 U.S., at 658, 104 S. Ct., at 2046. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.
>
> One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan*, 446 U.S., at 345-350, 100 S. Ct., at 1716-1719, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, *see, e.g.*, FED. R. CRIM. P. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. *Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, supra*, 446 U.S., at 350, 348, 100 S. Ct., at 1719, 1718 (footnote omitted).

*Strickland*, 466 U.S. at 692 (emphasis added)

The circumstances of this case do not persuade the Court that any purported "actual conflict of interest" in this case falls within the rule of *per se* prejudice. And as stated above, given the ample evidence of guilt in this case, Defendant has otherwise failed to establish prejudice under *Strickland*. Defendant's claim of ineffective assistance fails.

### III. CONCLUSION

For the reasons set forth, Defendant Jamie Pina's Motion for New Trial (ECF No. 160) is denied.


DATED: August 23, 2017            /s/ Janet T. Neff
                                               JANET T. NEFF
                                               United States District Judge